I should not even have to look down at the names of the attorneys because you have argued so often and always very ably. Thank you. It's nice to be back. It's been a while since I've had the pleasure of appearing for you all. Well, may it please the court, I'm here today on behalf of Charles Walker, who's the defendant in this case. And the primary issue in this case is whether the district court abused its discretion by rejecting a plea bargain negotiated by Mr. Walker and the government, not based on the particulars of his case, but for broad policy reasons based on incorrect conceptions of the context of the case, the role of the jury within that context, and the workings of the modern grand jury. Well, isn't that a little bit unfair to what the district court did because Judge Goodwin talked at length, I think it was Judge Goodwin, wasn't it? Yes, Your Honor, it was. He talked at length about the individual characteristics. He talked about his criminal record and all the trouble he'd been in and how he always got off easy. He's always gotten off easy. He did. He did. He did talk about it. He did talk about it. But he talked about a lot of other things, too. He did talk about that, Your Honor. There's no question about it. He never in the process of rejecting the plea agreement said, I'm rejecting this because it's too lenient. He said he was rejecting it because it was not in the public interest. Yes, Your Honor. But the public interest as shown by the context. But in the context of his background. In context of his background, he'd gotten off easy. He said that. He indicated that, but that was not the reason he rejected the plea agreement. He says he was convicted of 18 additional times, and then he says his convictions include possession of a controlled substance and carrying a concealed weapon without a permit, wanton endangerment, possession of cocaine based with intent to distribute, disorder of reckless operation of a vehicle, three driving under suspension convictions. And he goes on and on. And he said, there's this lengthy record of convictions and nobody's ever really brought him to account on it. And now's the time. I mean, the game's up. And that's individually directed, isn't it, Mr. Byrne? That's not a general statement. That is something that honed in on the record of this particular defendant. That portion of Judge Goodwin's remarks are directed at Mr. Walker's characteristics and the nature of the offense that he had pled guilty to at the time. But that comes in the context of this long, exegesis. You're saying he didn't have authority to do this? What are you saying? I'm saying that he abused his discretion.  No, Your Honor. District courts have the authority to reject a plea agreement. He can reject a plea agreement. He can reject a plea agreement. Yes, Your Honor. And it's in his discretion. Yes, Your Honor. But the matter is, what is the exercise of that discretion? You're saying he was arbitrary and capricious? I'm saying that he was doing it for reasons that were not particularly related to the facts of this case and that those reasons were based on incorrect presumptions. Well, the litany that Judge Wilkinson just recited, his background, I mean, he was getting off easy. I mean, you all made a good deal. I think that's what Judge Goodwin was saying. You all really made a good deal for him. I think that's certainly part of it. You made a good deal for him and the judge wasn't going to buy it. Yes, Your Honor. And I'll agree that's certainly part of it. But I think it's a small part of the district court's basis. And I think that's clear. The district court's message seemed to be that there should have been a jury trial because that's the way to educate the public and get the public involved, and that we're in a phase where we're not. And it was in the public interest to do that. While he did recite his history, I'm not sure he ever mentioned that it was too lenient or too light at all. And this was a plea agreement in which the government dropped charges. It's a peculiar type of agreement because that's the discretion of the prosecutor, whereas this was not addressing the leniency of the sentence. It was addressing whether the prosecutor's discretion was appropriate. Basically dropped charges. So I think there is a separation of powers issue underlying a denial of a plea agreement. Yes, Your Honor. And I think that's correct. And I think you're right that Judge Goodwin mentioned the need for a jury trial. And that's the thesis he had at the very end. And he summarizes his last paragraph. And then he says, this is against the public interest. Yes, Your Honor. And it's a little troubling when the US attorney and the defendant both agree to something which involves dropped charges, not a recommendation to the court on the sentence, but dropped charges, which the prosecutor has the discretion to do. The prosecutor didn't have to bring any of the charges. That's correct, Your Honor. And the judge said, well, he wasn't even sure of that. He thought that the grand jury served a lot larger role than the petty juries. And so the question is whether a judge can engage and second guess the prosecutor and a decision not to prosecute and use that as a basis for setting aside an agreement that the parties reached apparently with the advice of counsel and under good faith. Yes, Your Honor. And I think one of the important parts of that is in talking about what a jury trial would do, a jury trial would not have the kind of educational impact that Judge Goodwin- He's talking about jury trials in the context over a time span. There weren't enough jury trials. It'd be good for the public if there were more jury trials. I get the people involved and he was interested in what was going on in Southern West Virginia. And I have a lot of sympathy for what he was dealing with, but he also was talking about this guy individually. And I also have some sympathy with Judge, what Judge Goodwin, what Judge Niemeyer says about the separation of powers. But I'm, I question whether the defendants are the right one to raise that. It's the prosecutors getting stepped on and they're not complaining. That's true, Your Honor. I know. You know, they could have dismissed and walked away. If they were offended by what the judge did enough, the prosecutor said, it's not the judge's business. We, we control prosecutions. And that has occurred in some subsequent cases where- It occurred in past years in this district. There's simply no legal reason that the district court had to accept this plea agreement. He was perfectly within his rights to reject it. And the, and, and both parties knew that. And so you, once again, we're under an abuse of discretion standard. Yes, Your Honor. And that's a deferential standard. And he had a perfectly, he had a perfect right to reject the sentence because the dismissal of the gun count resulted in a dramatic reduction in the base offense level from 28 to 12. And the district court would say this, this kind of a reduction does not serve the, the purposes that sentencing's supposed to serve under 3553A. And the question is, did he abuse his discretion? And did he further abuse his discretion of, of, of, of pointing, by pointing to a crisis which is absolutely devastating the more, most vulnerable parts of our communities. And it has grown exponentially when heroin is combined with the use of this highly toxic fentanyl and is producing overdose deaths in a manner which must have torn up, tear the heart out of many West Virginians. And to say that he somehow could not take account of that in his comments, where he had a perfect right to reject the plea agreement seems to me to, to muzzle the district court in a manner that's not at all required by the law. He didn't just sentence him on some general thing. He sentenced him because time after time after time and conviction after conviction after conviction, the system had dealt leniently and permissively with this and it's time for it to stop. And it's okay for a district judge to say that. And let me say, let me add to that, that you all agreed to that in the plea agreement. In paragraph 15 of the plea agreement, which is the penultimate paragraph, numbered paragraph, the last sentence says, if the court refuses to accept this agreement, it shall be void. It contemplated that the judge could reject it. You specifically contemplated that. You contemplated that. The government contemplated that. You took it and presented it to him. And he rejected it. Now you're up here complaining and said he committed terrible error by rejecting it. But your honor, everyone was aware it could happen, but nobody had any idea it was going to happen and it was going to happen in the way it did. You put that in there and everybody knows it and the defendant signed it too. He knew it could happen. I mean, it's right there. Yes, your honor. And like I said, our position is not that the district court could not have rejected the plea. It's that he rejected the plea. For the wrong reasons is what you're saying. Yes, your honor. You don't, and you don't like his explanation. He wrote this big, long explanation and talks about this drug crisis and not enough trials, the community would be better off if they were educated on all this. And that's a collateral benefit. I don't think any of us would argue that. Publicity about this is good for the community and people that do this kind of stuff get prosecuted for it and they ended up in the penitentiary and they get good lawyers to represent them and they get due process. It's a good system. It's a wonderful system. Let's use it. That's what Judge Goodwin, I think, is talking about. And the person, if they're stepping on anybody's toes, it's the United States attorney or the attorney general of the United States. If they don't like it, they can complain about it. They can tell Judge Goodwin, don't do this to us anymore. If you don't accept our plea agreements, we're not going to prosecute. They haven't done that. He didn't accept their plea agreement and they, instead of backing off and saying we're not going to prosecute, they prosecuted him further. And he ended up with more time than he could have gotten, I guess, under the plea agreement. Well, he could have gotten the same sentence. He could have gotten the same sentence. It was within the statutory range. He ended up more in your contact range. Yes. He ended up with more counts than your contact range. We probably would have been here on a different issue at that point. You might have had. I'm sure he would have. That would be fine, too. But the nature of the opioid crisis, nobody's going to deny it, but nobody in southern West Virginia... Judge Wilkinson's exactly right. Sure. But anybody in southern West Virginia who doesn't know about the opioid crisis is not going to be educated by a trial that goes on in a federal court where there are no cameras and there's probably no reporting. We don't know how they're going to be influenced. It's on the front page of the newspaper. It might have some impact. If it does, it's certainly going to be wonderful that it does. With due respect, Your Honor, it's been on the front page of the newspaper. It's been in Oscar-nominated documentaries. It's been in news reports that went around the world when Huntington had its particular horrible day. But he's adding the prong to it. People get prosecuted for it. They get punished for it. He said, we haven't seen enough of that. We haven't had enough trials. In the last four or five years, we've only had 18 trials in the district. He's adding that. I mean, I assume nobody disagrees that those are the facts. I know my co-counsel would. That everything's resolved on pleas. He's lamenting that because when Judge Goodwin and I started practicing law, we didn't have sentencing guidelines and all this stuff. People got indicted. They went to trial. My co-counsel would be happy to tell you that if we got rid of mandatory minimums tomorrow, he'd try every case. But yeah, we have a responsibility to do ... But these mandatory minimums and sentencing guidelines and all this generate plea agreements. Everybody needs to work it out. Acceptance of responsibility. It's mandatory for him to go to trial. Your Honors, before I sit down, I need to shift to the gun issue very quickly because I need to admit to a mistake that we made in our reply brief. In our reply brief, we pointed out that the trace report and the NCIC report had different serial numbers for the firearm and concluded from that that the NCIC report didn't even report to be referring to the firearm that was at issue. That was incorrect. Aren't they in common use to identify stolen firearms? Not for sentencing purposes, Your Honor. Why wouldn't they be relevant evidence in a sentencing proceeding? It could be relevant evidence, but I don't think there's sufficient evidence. Well, they're admissible evidence. They are admissible evidence. Well, they're admissible evidence and the judge can decide it's enough. Well, we'd argue that it's not. I know you do, but I appreciate that you corrected ... I didn't know you were going to correct that. I was concerned about that. We, in the reply brief, pointed out that the trace report and the NCIC report have different serial numbers. The trace report is mistaken. The NCIC report has the serial number of the firearm that was admitted at trial. There's no serial number problem? Correct. Correct. I was concerned about that. Correct. Oh, okay. Okay. Thank you, Your Honor. Appreciate your candor. That's good. Mr. Lowe. May it please the court. Good morning. There are three issues before the court from the appeal of the defendant. The court is clearly most interested in issue one, which is the rejection of the plea. Defense counsel, appellate counsel didn't even get to the Batson issue. So I'll start with that issue of the district court rejecting the plea. And I'll address Judge Nehemiah's comments about the separation of powers and the concern about a judge rejecting a plea, especially in a charge bargain situation where it's not a sentencing bargain. My point is that this plea agreement was a charge bargaining agreement and I've always understood that the prosecutor had a broad range of discretion and that that certainly would have to be read into the extent to which the district court exercises its discretion. The government seems to be fairly moot on this, mute on this point. I don't know what your position is, but I'm interested to hear it. So the United States is definitely interested in plea bargains and they're important in the system and we agree that the district court has less discretion in rejecting pleas when it's a charge bargain as opposed to a sentencing bargain. But under the facts of this case, the district court didn't abuse its discretion and it's for the exact reasons that Judge Wilkinson and Judge King brought up. The defendant had an extensive criminal history both as a juvenile and an adult and the particular facts of this case were disturbing to Judge Goodwin and he said that. So not only did he have this violent and drug convictions in his criminal history, not only did he not serve any significant amount of time before, but the particular facts of this case disturbed the judge and he said that. And under the factors that he set forth in his opinion, the Walker opinion, he addressed those factors as they relate to the specific facts of this case. So there may be some hypothetical case in the future where these factors don't fit and there may be a reason to argue about the district court rejecting a plea agreement, but not this case. So in this case, under his four factors, he brought these specific issues that the court's concerned about, criminal history and the violence, into his four factors and he did not say the specific words, too lenient, but that's clearly why he rejected the plea. In his final factor, he talks about the reason for the plea and he says that when he examines the plea in the light of the PSR to determine the motivation, whether it's to advance justice or avoid trial, he says the United States traded away six counts from the grand jury indictment for one count in an information and that clearly shows that he thought it was too lenient. That's why he rejected the plea. Another issue that didn't come up in the first argument was the waiver argument. The defendant prior to trial pled guilty to three drug counts in the indictment. When a defendant pleads guilty and it's a knowing involuntarily and it's entered knowingly involuntarily, he waives all arguments that he could have made about anything that happened prior to the plea. The rejection of the plea agreement by the district court was one of those. So as to those three drug counts, the defendant waived those arguments. You were much more... In the indictment, he pled the three counts in the indictment that had been the subject of the plea agreement? No. So after the court rejected the... There's two indictments here. Correct. And there's an information. Correct. The first indictment had six counts in it. Right. The information had one count in it. Right. He was not convicted of any of those. Correct. Then there was a second indictment that had four counts in it. Yes. And he pled guilty to three of those four counts. Correct. Correct. So he pled... There were three drug counts. That's the case that's on appeal. Yes. But they're getting in the background of how they're complaining about how we got there Yes. Because of the plea agreement and the rejection of it. Correct. But by pleading guilty to the three drug counts in the superseding indictment, he's waived any arguments about the rejection of the plea as to those three drug counts. I'll turn to... If we don't buy your waiver argument, what's your position on the merits of it then? Well the merits of the rejection of the plea are that the... Well you're saying he's waived it. Assume we're not going to buy your waiver argument. Well then the first argument is that... Well the first argument is waiver, but if the court doesn't accept that... Your position has to be that Judge Goodwin was right. That Judge Goodwin... Even though you were the government and he was rejecting your plea agreement. That Judge Goodwin didn't abuse his discretion. Right. He didn't abuse his discretion. He was legally correct. He was within his discretion to reject the plea as determining that it was too lenient. He had the power to reject the plea as a... Plea agreement recognized. United States District Judge. Yes. He clearly had the power to do it. I think there's no dispute on that from anybody. The question is, are there any limitations to that discretion? And it seems to me what you're saying is the position of the United States. You're not trying to preserve your discretion of dropping those charges, but saying it was appropriate for the judge to reject that plea agreement. Not exactly. I want to understand your position clearly. I think that's what has to be your position. Our position is that the judge at the district court level has discretion to accept or reject pleas. I want to hear that again. He has discretion. I want to hear what the government's position is with respect to the court's discretion in this case. So in this case, our position is he did not abuse that discretion because a reasonable mind could determine, like Judge Goodwin did, that our deal was too lenient. He didn't say that. He didn't even command that. His whole reasons were the fact that we're giving up the democratic anchor to this process. He emphasized the grand jury. He emphasized the jury function, what's the benefits from the jury function, and he basically said that loss of the jury trial is very important. And vis-a-vis that is the tension that the government chose to drop charges in this plea agreement in exchange for a plea to a particular account. Now, if the government is not saying that's an intrusion into your discretion and therefore an abuse, it seems to me that sort of ends the matter. Well, any time that the judge... Is that your position? No. Any time a judge rejects a plea, it's an intrusion into the... No, it is not, because the plea agreement has all kinds of things in it. It has some... A C plea even has a judge participating in it. But quite apart from that, there are often recommendations for the sentencing. There are recommendations on the facts to be found with respect to sentencing on the amount of drugs and so forth. But this was basically a dropping charges plea agreement, and that's what concerned me. But if the government's not just going to say that... Make the argument, you're not making the argument, then it seems to me we don't have a controversy. Not in this case. Well, why wouldn't... Why wouldn't... What Judge Niemeyer said, why wouldn't that be your position? That if the concern here would be some violation of separation of powers conceivably with respect to the prosecutorial ability to charge, but you would be the logic... I think Judge King alluded to this earlier. You would be the one to raise the separation of powers argument, and you're not doing that. You're defending this as I think you have within your perfect rights to do. That's a separation of powers argument too, that you can come up here before this court and defend the sentence, and that's what you've done. My view is reading this transcript as a whole, he understood that the parties were presenting to him on an agreement which they knew he might not accept, and that he didn't accept it for reasons that were individual to the defendant. And when you look at his recitation of the criminal history here, you can't escape the impression that he sentenced on the basis of individual factors. And he thought it was too lenient in terms of one of the 3553A factors, which was that over and over again, milder punishments had failed to do the job. And in order to achieve the 3553A factor of deterrence, somebody had to put a stop to it. And I come back to the point that district judges often in sentencing, they do serve as the conscience of a community. They are not disembodied from a community. They are, in a sense, along with juries and all our other democratic institutions, district judges are consciences of the community. And to make an allusion to a crisis which is devastating some of the most vulnerable people in communities across this country, and particularly in the Ohio River Valley, to say that a judge trying to draw attention to this and to the dimensions of the crisis that fentanyl has added in terms of overdose death for person after person after person, and to say that he was somehow prohibited under law from calling attention to it, and to rule he abused his discretion in so doing, seems to me profoundly wrong. Well, I agree with everything that you said, Judge, and this is not the case to raise the issue of separation of powers that Judge Niemeyer addressed. There may be a case in the future that comes before you with Judge Goodwin or another judge where he rejects a plea that is an abuse of discretion and we do want to address the issue of separation of powers. This is not the one for the very reasons that you stated. Do you take the Department of Justice, the United States government, doesn't raise it? Doesn't raise the separation of powers issue? Do you take the position that the federal public defender can't raise it in the context of their appeal? I hadn't thought about that, but I don't see why they couldn't. I really hadn't either. I just ... I don't see why they couldn't. My instinct was that this was the government's ox that's being gored, and it hadn't come forward and complained, and that that was the end of it on that point, but they've got to represent their client and do the best they can for their client. I think that they probably could raise it. They're certainly entitled to try to raise it. They could try to raise it. And they're doing it. They're doing a good job of it. But again, this just isn't the case where the district court abused its discretion based on the specific facts of this defendant's criminal history and what the judge called his vicious acts in this specific case. Well, that's the thing is it's just so often these cases come down to standards of review. And the sentencing issues in particular need to begin to respect the discretion of district judges on matters of sentencing. And a reversal for abuse of discretion is far more thundering than an affirmance on an abuse of discretion. You affirm on abuse of discretion. You say you could have accepted it. You could have rejected it. You could have taken one of three or four different courses. When you reverse on abuse of discretion, it sends ripples all the way through. And it cuts off options, says you can only do it this way. And an affirmance on the abuse of discretion leaves judges in future cases latitude, more latitude than a reversal on abuse of discretion. And that's why you have the abuse of discretion standard, to preserve that latitude. Since you are talking about sentencing issues, there is one sentencing issue. That's the third issue, if I may address that. That's the two-level enhancement for the stolen gun. So now the defendant admits that the gun he possessed was the gun that came up in the NCIC report. He admits that the serial number wasn't wrong. He admits that he said, I'm not sure he admitted everything you just said. He certainly admits that his point about the serial number was incorrect in his repropery, if he candidly does that. So you're saying that the NCIC report was enough. So yes. But you can ask defense counsel in rebuttal. He has conceded that the gun he possessed was the gun listed in the NCIC report, not just that the serial numbers match. But in any event. I thought there was a dispute about the name of the gun, too. Or a type of gun, or something. There's something about that. But there's no dispute that the gun the defendant was convicted of possessing is the gun that was listed in the NCIC report. It's a handgun, right? It is a handgun. Yes. The issue is, is the NCIC report then sufficient? And so the United States initially has the burden by a preponderance of the evidence to establish the enhancement. And the NCIC report does that. And Judge Goodwin. It's an official government record, isn't it? It is. I don't think he makes that case too much. It seems to me, with his candid admission, that the two guns match in serial number. And actually, they match otherwise. I think they just call them differently. But they're all part of the same, was it a Brazilian snub-nosed gun? And the only difference was that one number in the serial number. And that turns out to be an error. That was an error by the officer in entering the trace report. Not an error on the NCIC report. You offered to call a witness. And Judge Goodwin said, we don't need it. Right. And when we offered, we proffered what the witness would say, which was that he talked to the victim of the theft. So importantly, the defendant wants you to just accept his blanket argument that NCIC reports aren't reliable. And you shouldn't accept them with absolutely no evidence that that's the case. They have not brought forth any evidence that NCIC reports are unacceptable. And the Fourth Circuit has accepted them, as other circuits have, for much more significant things than a two-level enhancement. The McDowell case, this court relied on a 40-year-old conviction solely established by an NCIC report to make the defendant an armed career criminal and then enhance his sentence. And they found that they're reliable. And again, in that case, the court said, defendant did nothing to come forward and say the NCIC report. Nobody said anything about the Batson issue. You've got to do something about it. Yes. So in my remaining time, if I can address the Batson issue. First, it's reviewed with great deference, because the district court was there. I thought we reviewed it for clear error. And clear error, exactly. Well, deference between, well, you said deference. I read discretion into that. Clear error. Clear error. So are you left with a firm conviction that there was a mistake? And what's interesting about this challenge. You struck the only black person on the jury panel. So that's the first problem. On the entire panel, there was only one black juror. And we decided very early on that we were going to strike young single women. And defendant never challenged that. So we never got to put on the record at the trial. Batson doesn't reach young single women, I guess. It doesn't. It's just confined to race, isn't it? Well, later cases have addressed issues of gender. But Batson, and this was Batson specifically based on race. But they made this argument about the comparative juror analysis, which doesn't help them at all. Because we left older married women on the jury. And if you looked in our brief, we addressed all the women who we struck were young and single. And they just did a comparative analysis. So we had no chance ever to put on the case, I think, that says it well was when they granted the challenge was that the government's argument reeked of afterthought. And that's not the case here. We had it well planned out. But we never got to tell the court. Why? Because the defendant never argued pretext. They never argued that striking young single women was just pretext for discrimination. Maybe we review it for plain error. Well, we argued that, again, they waived it. Because at trial. But you won on it anyway. With the district court. Yes. Yeah. But the defendant, and it's in the record. He accepted your explanation. They make the argument. You made the case. And the court said your reasons were neutral reasons. And that ends the matter, doesn't it? I don't know why you're worried about having the argument advanced before our court. Well, because the defendant has raised the argument in their appeal that it was pretextual. So in it. What's the evidence? They haven't offered any evidence, have they? Well, they haven't. And if you review the record. I didn't mean to stir all this up. But I just wanted to mention it, because it's the only issue here that hadn't been discussed yet. And I wanted to give him a shot at it. I think that the evidence is very interesting in the record at both before trial and after trial in the pre-sentence report. The defendant was a ladies' man. And we didn't want young, single women to be sympathetic to him. He's got six children from five different women. He's got a fiance. And he's intimately involved with five different women all at the same time. And that is in the record in the pre-sentence report at the joint appendix 620 to 621 and 704 to 705. The United States, I see I'm just about out of time. Or I am out of time. May I just conclude that we respectfully request that you affirm the district court on all three issues. Thank you. Mr. Byrne, we're pleased to hear from you in rebuttal, sir. Thank you. Very briefly, Your Honor, as briefly as I can be. On the plea rejection issue, I think it's important to note, to follow up on Judge Niemeyer's points about charge bargaining and sentence bargaining, the portion of the transcript that Mr. Lowe highlighted, the district court concludes by saying the problem is you're pleading guilty to an information and dismissing six counts. It's not about sentencing. It's not about punishment. And I think it's also important, this is page 98 of the joint appendix, right after the district court says I reject the plea agreement, he goes on to say that he has had 22 years of imposing long prison sentences for drug crimes. And that persuades me that the effect of law enforcement on the supply side of the illegal drug market is insufficient to solve the heroin and opioid crisis at hand. So essentially, he's saying that long sentences aren't going to get us out of this. So I think that cuts against- Ultimately, was it individual? And there's quite an extensive litany of factors that could pertain to this and only this case. But I think that cuts against the fact that this was an individualized determination as opposed to a determination about an individual within a broader context of the issues with plea bargaining. Is that a different criminal history? In fact, if he had a less extensive record, the district judge may well have accepted the plea and said this is a sentence that's, what is the word, Gall uses is adequate to achieve 3553A factors, but no greater than necessary. And I think with a different individual, I think there's a great likelihood that there would have been a different outcome. With this individual, the outcome is what we got for the reasons he gave. But I just think you have to look at the record as a whole. And it is individualized. In fact, it's a lot more individualized than a lot of the sentencing explanations we get up here, unfortunately. I would agree with your honor that you have to read the record as a whole, certainly. And I think in doing that, it's clear that Judge Goodwin was sort of after bigger fish than just what was going to happen in this case. I also wanted to point out, going back to something Judge King mentioned, you asked about was this arbitrary and capricious. There's some evidence that that might be the case. The Cato Institute panel that Judge Goodwin took part in, which we quoted from a lot in our reply brief, he admits during that panel that he doesn't know what individual factors would lead him to accept a plea bargain in one of these cases. And so as defense counsel, we're left with trying to provide effective assistance to our clients and saying we don't know what's going to happen. Not in a, generally there's the law that says the judge could reject this plea, but that this particular judge, we don't know what's going to happen. And that goes to also another question Judge King, you brought up. You mentioned that it's the government's ox that's being gored here. But we have oxes that get gored too. Well, your individual does. I meant that in the context of the separation of powers claim. Certainly. The argument that the prosecutor decides the charges along with the grand jury. That's the way it's done. Yes, Your Honor. Generally. Just finally on the NCIC issue, McDowell says the NCIC report is sufficient for probable cause. But probable cause is a lesser standard than preponderance of the evidence, which is the government's burden to show at sentencing. And the other cases that have relied or have used NCIC reports at sentencing have done them in a corroborating way. Either they corroborated other witness testimony or they were themselves corroborated by testimony. Official government record that is not created for this case, but is a general record on which is circulated for purposes of law enforcement. And in that regard is much like a business record that is admissible and accepted. It doesn't mean it's always perfect, but it can be rebutted. But why isn't it sufficient on which to base a factual finding by preponderance of the evidence? Because the reason the NCIC database was created and the reason it's used is not to prove things in court. It's to provide law enforcement with information. More convincing. In other words, that makes it more authentic and useful because it is provided for law enforcement, state and federal, to circulate information. And there's an incentive to make it clear and to make it accurate. It may not always be, but every business record is carried on. That's what makes a business record admissible into court is that it's not made for proof in court. It's made for conducting the business. And this is done for law enforcement as an ordinary government record. I don't understand why that analogy wouldn't be applicable. If I could go ahead and answer that. I would just disagree with that because law enforcement doesn't need to work within the strictures that the court does in terms of the modicum of proof. A lesser standard of proof. Because IBM circulates records. They generate records. They generate work hours and billing records and all kinds of things. And we accept those as probative evidence. And you're saying that these records are created by law enforcement for their operations and their purposes of helping the enforcement of stolen weapons. Anyway, I understand your position. Thank you, Your Honor. Thank you. Thank you. We'll come down and say shake hands with counsel and then we'll move into our final case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Robert B. King